William H. Warren, Respondent, *v.* Carlisle Haight et al., Appellants.

Where one who has received the proceeds of the sale of stolen negotiable securities with knowledge, loans the same or a portion thereof and takes a promissory note for the amount of the loan, these facts are no defence to an action upon the note brought by the payee or by one to whom he has transferred it after maturity; and this although it appears in addition thereto that the owner of the securities has commenced an action against defendant to compel him to pay the money to him, and has obtained an injunction therein, restraining him from paying it over to any other person.

The owner of the securities cannot intervene by mere notice to prevent the holder of the note from collecting it, or to have a trust declared in his favor, unless he is brought in as a party to the action.

(Argued January 7, 1875; decided May term, 1875.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of plaintiff, entered on the decision of the court upon a trial without a jury.

The action was brought upon a promissory note.

The answer, among others, contained the following count or defence:

"IV. The defendants, in further answering, aver, on information and belief, that Elizabeth S. Newton was the owner and holder of United States bonds and other property to the amount, in value, of $14,000; that said bonds and property were stolen and converted into money, which came to the hands of William E. Warner, with notice; and that the avails of said larceny were, by said William E., loaned to defendants to the amount of $100, and the defendants were, by said William Warner, fraudulently induced to believe said money so loaned to defendants was the money of said William, whereas, in truth and in fact, the same was the money of Elizabeth S. Newton; and relying upon the false representations of the said William, and being induced by the fraudulent concealments of said William, these defendants believing the money by them borrowed to be the money of said William, and relying thereon, gave the note aforesaid; and, afterwards, said Elizabeth S. Newton notified defendants of the facts aforesaid, and commenced an action in the Supreme Court of this State, which is still pending undetermined, against the defendants and said William, to compel these defendants to pay said money so borrowed to the said Elizabeth Newton, and obtained from the court an injunction in said action, restraining these defendants from paying said money to William Warner, or to any other person, until the further order of this court; and, as

these defendants are informed and believe, the said Elizabeth S. Newton has agreed and undertaken to indemnify these defendants against the claim set forth in the complaint."

On the trial the defendants offered to prove by William E. Warner (the payee named in the note and to whom it was delivered) "the facts establishing the fourth count or division in the answer," to which the plaintiff objected, on the ground that said count, if true, did not constitute a defence to the action. The objection was sustained by the court and the proof excluded, to which the defendant then and there duly excepted.

*M. M. Waters* for the appellants. As plaintiff did not acquire title to the note before due, any defence existing against the payee is available. (Code, § 112; 22 N. Y., 535; 38 id., 107; 9 id., 211; 12 id., 632; 2 Hilt, 275.) As the money loaned belonged to Mrs. Newton, she could recover it of defendants, although they had given their note in form to William E. Warner. (52 N. Y., 1–6; 45 id., 387; 3 id., 379–382; 5 Lans., 424; 6 How., 471; 4 Paige, 62.) Mrs. Newton had a right of action against defendants for the money loaned to them. (Code, § 111; 2 Grat., 544; 3 Hill, 72; 2 Kent Com., 796; 19 Pick., 32.)

*H. Ballard* for the respondent. Plaintiff, as against defendants, has a right to enforce the payment of the note. (*Hill* v. *Northrup*, 1 Hun, 612; Code, § 122; *Goodman* v. *Simonds*, 20 How. [U. S.], 343; *Bk. of Pittsburgh* v. *Neal*, 22 id., 108; *Murray* v. *Lardner*, 2 Wal., 110; *Magee* v. *Badger*, 34 N. Y., 247; *Welch* v. *Sage*, 47 id., 143; *Seybel* v. *Nat. Cur. Bk.*, 54 id., 301; *Dutch. Co. Ins. Co.* v. *Hackfield*, 47 How., 330; 1 Hun, 675; *Chapman* v. *Rose*, 47 How., 13.)

LOTT, Ch. C. We must assume, in the consideration of the question presented by the appeal to this court, that the matters alleged in the fourth count or division (as it was termed on the trial) of the defendants' answer are true, and if they

would have been available as a defence to an action on the note by William E. Warner, the payee named therein and to whom it was delivered, had he continued to be the owner and holder thereof, it may be conceded that they were admissible as evidence against the plaintiff in the present action at the time the defendants offered to prove and establish them. He, at that time, had not shown that he was a *bona fide* holder of the note for value. His possession of it was, it is true, sufficient to entitle him to a recovery of the amount payable by its terms, in the absence of proof impeaching his title to it or his right to such recovery, but it was competent for the defendants to prove, for the purpose of rebutting the evidence of title and right arising from the mere naked possession of the note, that it was void in its inception, or obtained by fraud or without consideration, or any other fact establishing its invalidity in the hands of Warner; and unless the plaintiff, on such proof being given, showed that he had become the *bona fide* owner and holder thereof for value in the usual course of business, before its maturity, he would have had no better right to a recovery than Warner if the action had been brought by him. It therefore becomes necessary to consider whether the facts alleged in the portion of the answer above set forth would have constituted a defence to an action by Warner. They are substantially: First. That the note in question was given on and for the loan of the sum of $100 by Warner to the defendants on the representation by him and under the belief by them, in a reliance on such representation, that the money belonged to him. Second. That the money was in fact a part of the avails of certain United States bonds and other property which had been stolen from Elizabeth S. Newton, the owner and holder thereof, and converted into money. Third. That the money arising from such conversion came into the hands of Warner and was received by him with knowledge and notice at the time that it was the avails of the bonds and property so stolen, and the proceeds of such larceny. Fourth. That Warner, on making said loan and taking the note in question therefor, knew that the money loaned was a

portion of the said avails and proceeds, and that the defend-
ants had no knowledge or notice whatever of that fact.
Fifth. That the said Elizabeth S. Newton had notified the
defendants that the money so loaned to them was a portion
of the avails of the property so stolen from her, and that she
had commenced an action against them and Warner, which
was still pending and undetermined when her answer was put
in, to compel the defendants to pay the amount for which the
note was given to her, in which an injunction had been
obtained, restraining them from paying it to Warner or to any
other person until the further order of the court in which that
action was pending; and, sixth, that the defendants were
informed and believed that Mrs. Newton had agreed and
undertaken to indemnify them against the complaint either in
the present action or in that commenced by her, it being
ambiguous which was intended.

Assuming, as before stated, that all those facts are true,
they fail to establish any defence to the note if it had been
held by Warner when the answer was interposed or when the
present action was commenced. The money loaned by him to
the defendants had not been stolen, but was a part of the avails
of stolen bonds, which had been converted into money. The
portion received by the defendants on the loan was so received
without any knowledge or notice whatever that it was a
part of such avails, or that it had come into the hands of
Warner illegally, or that he knew that any bonds had been
stolen from Mrs. Newton, or that the money was derived from
the conversion of those or any other bonds. Hence they, on
giving their negotiable note therefor, obtained a good title
thereto as *bona fide* receivers or borrowers thereof for value
in the usual course of business. Having such title to the
money, which we may assume had been used in the prosecu-
tion of their business, and beyond any legal claim thereto or
any control over it by Mrs. Newton, they could not, on any
principle of right or honesty, retain the benefit of it and refuse
to pay the note to Warner, who received it as the considera-
tion for the money he paid therefor on its delivery to him.

Their obligation to pay the note was not annulled or discharged, or in any way affected by a mere notice to them given by Mrs. Newton, after its delivery, of the fact that the money lent was a portion of the avails of her stolen bonds, and the temporary injunction restraining them from paying the note to Warner or any other person did not divest him of his title to it or interfere with his right to use and dispose of it as he saw fit. He was not the agent of Mrs. Newton, but he claimed and held the note as absolute owner in his own right. The money loaned by him was not *her* money. It was, it is true, derived from the conversion of bonds belonging to her, but such conversion was not made by Warner, and it had, moreover, entirely changed and altered the character of the property stolen. Its identity was lost. The legal title to the portion of the avails of the bonds for which the note was given was, before the loan, vested in Warner, and so was that of the note after its delivery. If Mrs. Newton had an *equitable* right to the money, before its loan to the defendants, and to the note subsequent thereto, that would not have been a legal defence to them if the present action had been brought by Warner.

The last statement in the subdivision of the answer above set forth, and constituting a part of the proof offered, alleging that the defendants were *informed and believed* that the said Elizabeth Newton had agreed and undertaken to indemnify them " against the claim set forth in the complaint " (whether in her action or this is not stated), is idle and wholly immaterial. It is not an allegation that such agreement and undertaking had been entered into ; and if it had been proved that such information, as alleged in the statement, had been given to them, and that they believed it, the proof would not have established any material fact ; but if it be conceded that the offer had been, in connection with the other matters stated, to prove such indemnity, it clearly could not have relieved defendants from making payment to Warner, or whoever was the bearer of the note. It might secure them against loss for yielding a compliance with Mrs. Newton's notice not to pay, and obeying the injunction issued to restrain

them from making such payment; but it did not in any manner affect the right of Warner, or any holder of the note, to enforce it in the present action. Mrs. Newton is not a party to this action, and her rights could not be litigated in it. Whether she could have made herself such, or the defendants could have brought her in as a party and relieved themselves from liability by the payment of the money into court, or from the consequence of conflicting claims thereto, it is unnecessary to inquire. It is sufficient to say, that as the matters offered to be proved would not have been a defence to an action by Warner, it is clear that it could not have been of any effect against the plaintiff. He had, at least, the same, and as good a right to a recovery as Warner had. Hence the rejection of the proof was not erroneous.

The views above expressed show that the exception to the rejection of the proof offered is not well taken.

There were general exceptions taken to the conclusions of fact found by the judge, and to his conclusion of law based thereon. His findings of fact, having been affirmed by the General Term, are conclusive on us, and they clearly warrant his conclusions of law.

It follows that the judgment appealed from must be affirmed, with costs.

DWIGHT, C. The question in this cause is whether, if one steals property and sells it and loans the proceeds, receiving a promissory note payable to bearer, and then transfers the note after maturity, and the holder brings an action against the makers, they can set these facts up in defence.

It will be observed that the owner of the stolen property was not made a party to the action, though the defendants offered to show that she had agreed and undertaken to indemnify them.

This is not the case of loaning the precise thing stolen, *e. g.*, the bailment of stolen goods. Mrs. Newton, whose property (United States bonds) had been stolen, never owned the money which was lent to the defendants. The only possible ground

on which she could have claimed it, even from the thief, was, that she chose to ratify his act and make him her trustee. He would have been, in that case, a trustee *ex maleficio*, but still a trustee. The case will be made more clear by assuming that such chattels as diamonds had been stolen or converted into money. The owner could ratify the sale, declare the wrong-doer an agent and bring an action against him for money had and received to her use. The same rule must be applied to the proceeds of the sale of negotiable securities. If the money had been invested in land or stocks of any kind, the owner of the property would have an election to demand that a trust should be impressed upon the property in her favor, or she might still follow the property that had been stolen, except, of course, in the case of money itself or negotiable securities. Accordingly, when Warner invested the proceeds of the stolen bonds in notes, like the one in litigation, Mrs. Newton had a right to have a trust impressed upon the note in her favor, in the same manner as if he had bought railroad stock with the proceeds. It is thus plain that the real question in this cause is, whether a *cestui que trust* of a note can intervene and prevent the holder of the legal title from recovering the amount due upon it, simply by prohibiting the makers from paying the person with whom they contracted, or his assignee. In making this claim, Mrs. Newton necessarily ratifies the loan. She says, in substance, to the borrowers : " True, you borrowed this money and executed a note for it, which, in equity, belongs to me, but you need not pay the person of whom you borrowed and with whom you made the contract of loan, simply because I notify you not to pay it." I do not think that such a notice is of any avail, to prevent the holder from collecting the note. The only way in which Mrs. Newton can make any claim against the defendants, is to stand upon the sale of the bonds, and the power of Warner to make the loan and to have him, in substance, declared her trustee. To accomplish this result, she should have been a party to the action, and could, undoubtedly, have been brought in by proper amendment. It is not necessary to decide whether this should have been accomplished

by means of a proceeding analogous to a bill of interpleader. In some appropriate form, all the parties should have been before the court, so that the defendants could have paid over the money, and the conflicting rights of the plaintiff and Mrs. Newton have been adjusted.

The offer of Mrs. Newton to indemnify the defendants does not change the posture of the case. A judgment in the plaintiff's favor would not bind her, notwithstanding the indemnity. There was no claim on the argument that the injunction prevented the plaintiff from taking further proceedings in the cause. The judge, at the trial, found that the plaintiff was the holder of the legal title to the note. This was found upon conflicting evidence, and the finding is not reviewable here. We hold that under such circumstances a party like Mrs. Newton having, as is assumed, equitable rights, cannot intervene by mere notice so as to prevent the holder from collecting the note, but can only assert her rights in the usual mode : that is, by becoming a party to an action in which the respective rights of the parties can be adjudicated.

The judgment of the court below should be affirmed.

All concur.

Judgment affirmed.