CHARLES MYERS *vs.* AMERICAN RAILWAY EXPRESS COMPANY.

Suffolk.   November 15, 1922. — January 5, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Carrier,* Of goods.   *Evidence,* Presumptions and burden of proof.

At the trial of an action against an express company for damages resulting from an alleged misdelivery of goods delivered to the defendant by the plaintiff for shipment to a named consignee at a designated address in Boston, there was evidence that the plaintiff had received a telegram of inquiry purporting to have been sent by a person and from an address corresponding to those to whom the goods afterwards were consigned; that samples were sent by the plaintiff to that name and address by parcels post; that the plaintiff then received another telegram with an order for the goods, which was confirmed by a letter having the same name and address; that the goods arrived in Boston and that, on the same afternoon, a teamster presented to the defendant an order for them in writing which was upon the same letter head and purported to be signed by a person of the same name and address as those of the consignee and to describe the goods by the name and address of the plaintiff as consignor and the value as stated by the plaintiff. The goods were delivered to the teamster. So far as the consignee was concerned, the transaction was a swindle. The jury answered affirmatively a special question, "Was the delivery to the teamster authorized by the consignee?" The judge refused to order a verdict for the plaintiff and the jury found for the defendant. *Held,* that

(1) The finding, that the goods were delivered to a teamster authorized by the consignee, was warranted by the evidence;

(2) The judge correctly refused to order a verdict for the plaintiff.

CONTRACT or TORT for the value of goods shipped by the plaintiff by use of the defendant and alleged to have been misdelivered by the defendant. Writ dated September 8, 1921.

In the Superior Court, the action was tried before *Morton,* J. Material evidence is described in the opinion. At the close of the evidence, the plaintiff moved in writing that a verdict be ordered in his favor. The motion was denied. The plaintiff then asked for the following rulings:

"6. There is no evidence that the order on which the defendant delivered the goods to the alleged agent was signed by the consignee.

"7. There is no evidence that the consignee authorized the defendant to deliver the goods to the person who received them from the defendant.

"8. There is no evidence that the consignee authorized delivery to the person to whom the defendant made delivery."

The foregoing rulings were refused.

The jury answered in the affirmative the following question: "Was the delivery to the teamster authorized by the consignee?" and found for the defendant; and the plaintiff alleged exceptions.

*A. B. Tyler,* for the plaintiff.

*A. M. Pinkham,* for the defendant.

CROSBY, J. This is an action to recover the value of goods shipped by the plaintiff from Philadelphia to Boston, which the plaintiff alleges were misdelivered by the defendant.

The plaintiff, a manufacturer of clothing in Philadelphia, on July 6, 1921, received a telegram from Boston signed "M. Allman 455 Columbus Ave.," requesting him to submit samples of clothing at lowest prices for ten-day payment; in response thereto the plaintiff sent samples by parcel post to "M. Allman, 455 Columbus Avenue, Boston, Mass.," and later received another telegram that the samples were satisfactory and ordering certain goods to be shipped by freight immediately; this telegram which was signed "M. Allman," was followed by a letter, with the same signature, dated July 8, 1921, and confirming the telegraphic order. At the top of the letter was printed the name, business and address of M. Allman; upon its receipt, the plaintiff found in Dun's Mercantile Agency the name M. Allman and his rating, but no address was given; thereafter the plaintiff sent the goods by the defendant company on July 11, 1921, although they had been ordered to be sent by freight. The case containing the goods was directed to "M. Allman, 455 Columbus Avenue, Boston, Mass.," and the defendant issued to the plaintiff its regular form of express receipt. On the same day the plaintiff mailed to M. Allman bills for the goods which stated that they had been sent by the defendant company; the samples never were returned and the plaintiff never received payment for the goods nor saw them afterwards. He

waited more than ten days for payment, and then, on July 26, 1921, and also on August 4 following, sent letters to M. Allman, 455 Columbus Avenue, requesting payment; both these letters were returned to the writer in their unopened envelopes.

It appeared that 455 Columbus Avenue was a hotel, there was no clothing store at that address, and no one there by that name. The manager of the hotel testified that sometimes letters and parcels came to the hotel for persons who did not live there, and that sometimes persons who were not guests called to see if mail had been left there for them.

There was evidence that the goods arrived at the South Station, in Boston, from Philadelphia, at about one o'clock in the afternoon of July 12, 1921, and that on the same afternoon at about four o'clock a teamster called for them and presented to a delivery clerk of the defendant a written order which read as follows: "Please deliver to bearer one case from Philadelphia, value $1,357.50, from Charles Myers Company, Philadelphia. M. Allman." The order was written on a letter head like that upon which the letter of July 8 was written. The teamster paid the express charges, taking a receipt for the amount paid, and received the goods, signing a receipt therefor in the name of M. Allman and with the initials M. B. He signed the receipt by making a cross. The delivery clerk testified that since then he had been transferred to another department in the defendant's employ, and that about two weeks after July 12 he destroyed the order with many others as he thought he would have no further use for them.

At the close of the plaintiff's evidence both parties rested, and the plaintiff presented to the judge a written motion that a verdict be directed in his favor; the motion was denied and the plaintiff excepted. He also excepted to the refusal of the court to give his sixth, seventh and eighth requests. The following question was submitted to the jury: "Was the delivery to the teamster authorized by the consignee?" The answer was in the affirmative, and the jury returned a verdict for the defendant in accordance with the instructions of the trial judge.

It is apparent that the whole transaction was a swindle, and that the person who ordered the goods from the plaintiff intended to get them by fraud and did not intend to pay for them; that

circumstance, however, does not determine the issue presented in this action.

The judge instructed the jury respecting the burden of proof and no exception thereto was saved by either party. Accordingly the only questions before us are whether the court erred in refusing to direct a verdict for the plaintiff, and in refusing to give the rulings requested.

It is plain that, if the jury were warranted in finding that the delivery of the goods to the teamster was authorized by the consignee, a verdict for the plaintiff could not properly have been directed, nor the rulings requested given.

While it appeared that there was a man named Morris Allman who lived in Roxbury and was engaged in the clothing business at 104 Salem Street, Boston, there was no evidence that he ever did business at 455 Columbus Avenue, nor that he ever ordered any goods of the plaintiff, nor that the plaintiff knew him or intended to make the shipment to him. On the other hand, it is obvious that the plaintiff intended to send the goods to the person with whom he was in correspondence and who ordered and agreed to pay for them. If the defendant delivered the goods according to the directions of the plaintiff, it performed its whole duty and cannot be charged with liability. . *Samuel* v. *Cheney,* 135 Mass. 278. *Edmunds* v. *Merchants' Despatch Transportation Co.* 135 Mass. 283. The carrier in making delivery of goods shipped is bound to follow the directions of the consignor under all circumstances. *Singer* v. *Merchants Despatch Transportation Co.* 191 Mass. 449. *Porter* v. *Ocean Steamship Co. of Savannah,* 223 Mass. 224.

The person who corresponded with the plaintiff under the name of M. Allman, undoubtedly received mail at 455 Columbus Avenue, as the package of samples was directed to that address and he acknowledged its receipt and ordered the goods. The person who ordered these goods both by telegraph and by letter requested that they be sent by freight. If they had been so sent, he would, upon receipt of the bill of lading from the plaintiff, have been able to obtain the goods from the railroad on presentation of the bill of lading. The bills for the goods which the plaintiff mailed to M. Allman on July 11, addressed to 455 Columbus Avenue, showed that the shipment was made by express, and

it is a rational inference that he received these bills; otherwise there is nothing to show that he could have known that the goods had been sent by express. The jury could have found that the teamster appeared at the express office in the South Station soon after the goods arrived with an order therefor written on a letter head identical with the one upon the letter received by the plaintiff dated July 8. This order correctly described the name of the consignor, the value of and the place from which the goods were sent. There was ample evidence to support a finding that the teamster who obtained delivery of the goods was sent by the man who ordered them and who the plaintiff knew as "M. Allman." Accordingly the jury were warranted in finding that the delivery to the teamster was authorized by the consignee.

As the plaintiff's motion could not have been allowed or his requests for rulings given, the entry must be

*Exceptions overruled.*